**Joy Bertrand, Esq.**
PO Box 2734
Scottsdale, Arizona 85252-2734
Telephone:  602-374-5321
Fax:  480-361-4694
joyous@mailbag.com
www.joybertrandlaw.com
Arizona State Bar Number 024181

**ATTORNEY FOR PLAINTIFF**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Idelfonso Valenzuela-Roman.;**<br>     **Plaintiff,**<br><br>     **v.**<br><br>**United States;  Pam Bondi, Attorney General (in her official capacity);  Jane and John Doe US Department of Justice Employees;  CoreCivic, Inc.;  John and Jane Doe CoreCivic Employees;  and ABC Corporations;**<br><br>     **Defendants.** | **Case No.**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF (JURY TRIAL DEMANDED)** |

NOW COMES Ildefonso Valenzuela-Roman and the minor children of to submit his Complaint for Damages, Equitable Relief, and Injunctive Relief.  He further submits the following:

**THE PARTIES**

**I.    The Plaintiff.**

1.    Mr. Valenzuela-Roman is a Mexican National.

2.    At the time of the filing of this Complaint, he is serving a sentence at the Metropolitan Detention Center.

3.    That sentence is for a conviction in *United States v. Valenzuela-Roman*, Arizona District Court Number 24CR0052 and a supervised release revocation term in *United States v. Valenzuela-Roman*, Arizona District Court Number 22CR2566.

4.    Mr. Valenzuela-Roman's release date is March 10, 2025.

5.    At all times relevant to the events set forth in this Complaint, the Plaintiff was detained, pre-sentenced at the Central Arizona Federal Correctional Complex in Florence, Arizona in the 2022 criminal matter, listed above.

**II.    The Defendants.**

6.    The Defendants are comprised of several United States Department of Justice (US DOJ) officials and a private corporation that contracts with US DOJ to run pre-trial detention centers.

7.    For claims that are governed by the Federal Tort Claims Act (FTCA), the Plaintiff has filed FTCA claim with the United States on or about February 12, 2025.

8.      A copy of that FTCA submission is attached as an Exhibit to this Complaint and its allegations are incorporated by reference.

9.      If the United States chooses not to resolve those claims short of litigation, she will amend this Complaint to include those claims.

10.     The corporate defendant is CoreCivic, Inc., a for-profit corporation that provides detention facility management services to US DOJ.

*A.      The US DOJ Defendants*

11.     US DOJ is an executive branch agency of the United States Government.

12.     Defendant Pam Bondi is the Attorney General of the United States.

13.     She oversees each of the agencies within the United States Department of Justice, including the United States Marshal's Service.

14.     She has ultimate authority over all policies, procedures, and practices as applied to US Marshal's Service Detention Facilities.

15.     Defendant Bondi is sued in her official capacity.

16.     The United States Department of Justice is headquartered in Washington, D.C.

*B.      The Corporate Defendants.*

17.     Defendant CoreCivic, Inc., is a Maryland corporation with its principal place of business at 10 Burton Hills Blvd, Nashville, Tennessee 37125.

18.     CoreCivic contracts with the United States Department of Justice to house persons held in custody pre-sentencing by the Arizona United States District Court.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction over this matter pursuant to 28 USC § 1331, because Plaintiff's claims arise under the Constitution, laws, or treaties of the United States.

20.     The Plaintiff filed their FTCA claims with the United States on or about November 12, 2023.

21.      As of the filing of this Complaint, the United States has not responded to the Plaintiff's FTCA claims.

22.     As to the Individual U.S. Department of Justice Defendants, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), because Plaintiffs' claims arise under the Fourth and Fifth Amendments to the United States Constitution, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. §§ 1985 and 1986.

23.     For state law tort claims raised in this Complaint, Plaintiff relies upon the law of the jurisdiction in which his injury occurred – Arizona.  This Court has jurisdiction over these claims, pursuant to 28 U.S.C. § 1367.

24.   Plaintiff seeks declaratory and/or injunctive relief, compensatory and punitive damages, attorney fees and costs, and such other relief that may be available to him.

25.   This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

26.   This Court has authority to grant injunctive relief in this action pursuant to 5 U.S.C. §§ 702, 706 and Rule 65 of the Federal Rules of Civil Procedure.

27.   This Court has personal jurisdiction over the Defendants in this matter and the underlying acts of this complaint took place in the District of Arizona.

28.   Venue in this district is proper under 42 U.S.C. § 1391, because, as described below, a substantial part of the acts or omissions giving rise to the Plaintiffs' claims took place in Arizona.

## STATEMENT OF FACTS

29.   The U.S. Marshals Service is responsible for maintaining custody of individuals detained pending trial or sentencing for federal criminal offenses. In fiscal year 2020, the Marshals received over 160,000 individuals into its custody and, on average, had custody over 62,000 individuals every day.[1]

---

[1] *Rivera v. Corrections Corporation of America*, 999 F.3d 647, 649 (9th Cir. 2021), citing U.S. Marshals Serv., FY 2020 Annual Report 47–48 (2021), https://www.usmarshals.gov/foia/annual-report-2020.pdf.

30.     Because the Marshals does not own or operate any detention facilities, it places those in its custody in facilities run by other entities.[2]

31.     The Marshals detain the vast majority—around 85 percent—of those in its custody outside the federal system through approximately 1,200 contracts with state, local, and private facilities.[3]

32.     The U.S. Marshal's Service often contracts with private prison companies, such as CoreCivic, to provide those detention services.

33.     CoreCivic, formerly Corrections Corporation of America, operates private prisons, detention centers, and other correctional facilities throughout the United States.[4]

34.     CoreCivic manages an estimated 39 percent of the country's private prison beds.[5]

35     CoreCivic manages an estimated 39 percent of the country's private prison beds.  At the end of 2020, the Marshals was the primary customer at eight

---

[2] *Rivera*, 999 F.3d at 649, citing U.S. Marshals Serv., Prisoner Operations 2 (2021), https://www.usmarshals.gov/duties/factsheets/prisoner_ops.pdf.

[3] *Rivera*, 999 F.3d 649-50.

[4] *Id*. at 650.

[5] *Id*., citing CoreCivic, 2020 Annual Report, Form 10-K 14 (2021), http://ir.corecivic.com/static-files/2d02c7d4-786a-4a48-8c1b-3e2522c511f3.

of CoreCivic's forty-seven facilities, and contracts with the Marshals accounted for 21 percent—$396.3 million—of CoreCivic's 2020 revenue.

36.     One of those contracts between the U.S. Marshal's Service and CoreCivic is for the operation and management of the Central Arizona Federal Correctional Complex in Florence, Arizona.

37.     Nearly $400 million worth of U.S. Marshals Service business accounted for 21% of CoreCivic's revenues in 2020, according to CoreCivic's annual Securities and Exchange Commission report.

38.     By 2022, the US Marshals Service was paying for-profit prison companies to operate 48 facilities with total average daily populations of 20,827 people — nearly a third of the total population in Marshals Service custody.[6]

39.     At the end of 2020, the Marshals was the primary customer at eight of CoreCivic's forty-seven facilities, and contracts with the Marshals accounted for 21 percent—$396.3 million—of CoreCivic's 2020 revenue.[7]

---

[6] American Civil Liberties Union, Letter to Ronald L. Davis, Director, United States Marshal's Service, September 18, 2023, available at https://assets.aclu.org/live/uploads/2023/09/2023.09.15-FINAL-ACLU-Letter-on-USMS-Failure-to-Comply-with-EO-14006.pdf (last visited February 17, 2025).

[7] *Rivera*, 999 F.3d at 650, citing CoreCivic, 2020 Annual Report, Form 10-K 7, 15 (2021), http://ir.corecivic.com/static-files/2d02c7d4-786a-4a48-8c1b-3e2522c511f3.

40.     Companies such as CoreCivic deny engaging in lobbying efforts, but private prison corporations such as CoreCivic routinely specifically target legislators over immigration "reform."

41.     By 2015, CoreCivic derived 51% of its revenue from federal contracts.

42.     CoreCivic (previously known as CCA) has a lengthy history of refusing to provide adequate medical treatment to those it houses.[8]

43.     CoreCivic has repeatedly been the subject of investigations and lawsuits regarding delayed health care to inmates and detainees, often resulting in death.[9]

---

[8] *See, e.g.*, *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-2267, 2019 WL 1399600, at *2 (M.D. Tenn. March 26, 2019) (shareholder class certified alleging CoreCivic's "failure to provide sufficient medical services to its inmates."); *Dodson v. CoreCivic*, No. 3:17-CV-00048, 2018 WL 4800836, at *1 (M.D. Tenn. Oct. 3, 2018) (alleging deliberate inference to prisoners medical needs); *Pierce v. D.C.*, 128 F. Supp.3d 250, 284 (D.D.C. 2015) (finding prisoner's ADA and Section 504 rights violated at CoreCivic facility).

[9] Seth Freed Walker, "Federal Officials Ignored Years of Internal Warnings About Deaths at Private Prisons," *The Nation*, June 15, 2016, available at https://www.thenation.com/article/archive/federal-officials-ignored-years-of-internal-warnings-about-deaths-at-private-prisons/ (last visited January 17, 2025). "At least 38 men died in the BOP's privately run prisons from 1998 to 2014 in the wake of inadequate medical care. An examination of thousands of pages of previously unreleased files revealed that gravely ill prisoners had been left untreated, or relegated to the care of low-level medical workers. In some facilities, inmates went months without seeing a doctor. Some prisoners who required emergency care were not transferred to a hospital, in an apparent attempt to save costs . . . In a striking confirmation of these findings, the new records show that BOP monitors documented, between January 2007 and June

**I.      CoreCivic's and the US DOJ's Operating Agreement.**

44.     The Operating Agreement prohibits US Marshal's Service detainees "from operating equipment that may expose the detainees to great bodily harm."[10]

45.     The Operating Agreement also provides:

> Prisoners or detainees shall not be used to perform the responsibilities or duties of an employee of the Contractor.  Appropriate safety/protective clothing and equipment shall be provided to prisoners or detainees as appropriate. Prisoners or detainees shall not be assigned work that is considered hazardous or dangerous.  This includes, but is not limited to, areas or assignments requiring great heights, extreme temperatures, use of toxic substances and unusual physical demands.[11]

46.     The Operating Agreement also requires CoreCivic to comply with the US Marshal's Service' Federal Performance Based Detention Standards.[12]

47.     Those standards include the requirement that inmates requiring medical care outside of the facility "are transferred under appropriate security to a facility to a facility where such care is available."[13]

---

2015, the deaths of 34 inmates who were provided substandard medical care. Fourteen of these deaths occurred in prisons run by CCA [the prior corporate name for CoreCivic."

[10]  Operating Agreement Section C.8.6.

[11]  Operating Agreement at C.8.6.

[12] Operating Agreement at C.2.1.

[13]  USMS Federal Detention Standards, B.4.7, available at https://www.usmarshals.gov/sites/default/files/media/document/detention-standards.pdf (last visited February 17, 2025).

48.	For non-emergency care off site, USMS prisoners require pre-authorization of the USMS to ensure consistency with USMS prisoner Health Care Standards.[14]

**II.	Mr. Valenzuela-Roman's Injuries.**

49.	On February 17, 2023, Mr. Valenzuela-Roman was held as a federal pre-trial detainee in the Central Arizona Florence Correctional Complex.

50.	The facility assigned him to work as a porter.

51.	In the course of that work, he was splashed with a caustic chemical that burned his eyes and skin.

52.	These burns were observed by this CJA panel attorney on March 10, 2023. In a motion to the Court, CJA counsel described "open wounds oozing blood" on Mr. Valenzuela-Roman's face.[15]

53.	CJA Counsel further documented to the Court delayed medical care for these burns.

54.	Counsel brought these injuries to the attention of CoreCivic and the US Marshal's Service on February 2, 2023.[16]

---

[14] *Id.*

[15] *United States v. Valenzuela-Roman*, Arizona District Court Number 22CR2566-DWL, ECF Doc. 24 at 1.

[16] *Id.* at 2.

55.     The following day, CoreCivic responded that it had given Mr. Valenzuela-Roman an x-ray and Tylenol.[17]

56.     CoreCivic also stated on February 23, 2023 that Mr. Valenzuela-Roman was "scheduled to see a provider."[18]

57.     Three weeks after the chemical injury, Mr. Valenzuela had not been seen by an outside provider for the eye injury.

58.     CJA Counsel contacted CoreCivic again on March 10, 2023.[19]

59.     On March 11, 2023, CoreCivic responded that an optometry referral was made on March 10, 2023.

60.     CJA Counsel noted to the Court that on March 1, 2023, CoreCivic denied Mr. Valenzuela-Roman's grievances about this delay in his medical care, because he had written in the margins of the grievance form – Mr. Valenzuela-Roman's vision injury nothwithstanding.

61.     Mr. Valenzuela now claims that the injuries sustained at the facility, where the US Marshal's Service holds the pretrial detainees for the Arizona District Court, are permanent.

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

62. These injuries were exacerbated by CoreCivic's delayed and denied medical care for these injuries.

**PLAINTIFF'S CAUSES OF ACTION AGAINST DEFENDANTS**

**COUNT ONE**
**VIOLATION OF THE FIFTH AMENDMENT**
**(Defendants John and Jane Doe U.S. DOJ Employees;  CoreCivic;  John and Jane Doe CoreCivic Employees;  and ABC Corporations )**

63. Plaintiff re-alleges each and every paragraph, *supra*, as if fully alleged herein.

64. At all relevant times, all Defendants were federal actors and were acting under color of federal law.

65. Mr. Valenzuela-Roman had a bodily integrity interest under the Due Process Clause.

66.  By requiring Mr. Valenzuela-Roman to work with dangerous chemicals or by requiring Mr. Valenzuela to work without protective equipment, the Defendants violated his Fifth Amendment rights.

67.  By failing to provide timely, necessary medical care, the Defendants violated Mr. Valenzuela-Roman's Fifth Amendment rights.

**COUNT TWO**
**VIOLATION OF THE FOURTEENTH AMENDMENT**
**(DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS)**
**(Defendants John and Jane Doe U.S. DOJ Employees;  CoreCivic;  John and Jane Doe CoreCivic Employees;  and ABC Corporations )**

68.    Plaintiff re-alleges each and every paragraph, *supra*, as if fully alleged herein.

69.    At all relevant times, all Defendants were federal actors and were acting under color of federal law.

70.     The Defendants' failure to provide Mr. Valenzuela-Roman timely, necessary medical for his chemical injuries, the Defendants violated his Fourteenth Amendment rights.

71.    Defendants' deliberate indifference to Mr. Valenzuela-Roman's serious medical needs are consistent with the Defendants' demonstrated policy and practice of deliberate indifference to the serious medical needs of persons in CoreCivic's care, custody, and control.

72.    Despite these reports, Defendants have taken no effective steps to eliminate or mitigate the delays and denial of care.

**COUNT THREE**
**NEGLIGENCE**
**(Defendants United States;  John and Jane Doe US DOJ Employees; CoreCivic;  John and Jane Doe CoreCivic Employees;  ABC Corporations)**

73.    Plaintiff re-alleges each and every paragraph, *supra*, as if fully alleged herein.

74.    Here, the Defendants were negligent in four, distinct ways.

75.    First, the Defendants were negligent in requiring Mr. Valenzuela-Roman to work with dangerous chemicals.

76.    Second, the Defendants were negligent in not providing Mr. Valenzuela the proper protective equipment or clothing when working with dangerous chemicals.

77.    Third, the Defendants were negligent in denying or delaying Mr. Valenzuela critical medical care immediately when he was injured.

78.     Fourth, the Defendants were negligent in denying or delaying Mr. Valenzuela critical medical care in the weeks after the injury, despite his requests for medical care.

## COUNT FOUR
## AGGRAVATED NEGLIGENCE
**(Defendants United States;  John and Jane Doe US DOJ Employees;  CoreCivic;  John and Jane Doe CoreCivic Employees;  ABC Corporations)**

79.    Plaintiffs re-allege each and every paragraph, *supra*, as if fully alleged herein.

80.    Defendants committed aggravated negligence in two, distinct ways.

81.    First, Defendants knew that work with dangerous chemicals, without proper protective equipment, involved a high probability that such harm would result.

83.    Second, Defendants knew that denying or delaying medical care for chemical burns would not only create an unreasonable risk of bodily harm to Mr. Mejia, but also involved a high probability that such harm would result.

84.    Despite the fact that the Defendants knew or had reason to know their conduct would probably result in harm, they nonetheless engaged in that conduct, which ultimately resulted in harm to Plaintiffs.

85.    A reasonable person in Defendants' position would have known or would have had reason to know that their actions created an unreasonable risk of harm and the risk was so great that it was probable that harm would result.

86.    As a result of Defendants' wanton and reckless acts and omissions, Plaintiffs suffered damages in an amount to be proven at trial, including but not limited to pecuniary damages, pain and suffering, and emotional distress.

**COUNT FIVE**
**NEGLIGENT SUPERVISION OR TRAINING OF EMPLOYEES**
**(Defendants United States and CoreCivic)**

87.    Plaintiffs re-allege each and every paragraph, *supra*, as if fully alleged herein.

88. The US DOJ employees and CoreCivic employees_*supra*, was the direct and proximate result of the United States' and CoreCivic's failure to properly supervise and train their employees.

89.    The United Staets and CoreCivic knew or should have known about the scores of DHS Office of Inspector General investigations, Congressional investigations, non-governmental organization investigations, prior lawsuits, and its own internal

90.    Despite the fact that the US DOJ John and Jane Doe Defendants and CoreCivic John and Jane Doe Defendants knew or had reason to know their conduct would probably result in harm, they nonetheless engaged in that conduct, which ultimately resulted in harm to Plaintiff.

91.    A reasonable person in US DOJ John and Jane Doe Defendants' and CoreCivic John and Jane Doe Defendants' position would have known or would have had reason to know that their actions created an unreasonable risk of harm and the risk was so great that it was probable that harm would result.

## COUNT SIX
### *RESPONDEAT SUPERIOR* LIABILITY
### (Defendants United States and CoreCivic)

92.    Plaintiff re-alleges the foregoing paragraphs as if fully alleged herein.

93.    The conduct of the United States' and CoreCivic's employees, occurred while they were acting within the ordinary scope of their employment.

94.    As such, the United States and CoreCivic are responsible for Mr. Valenzuela-Roman's injuries under the *respondeat superior* doctrine.

## COUNT SEVEN
### BREACH OF CONTRACT
### (Defendant CoreCivic)

95.    Plaintiff re-alleges the foregoing paragraphs, as as if fully alleged herein.

96.    CoreCivic housed Mr. Valenzuela-Roman, pursuant to a contract with the US Marshal's Service worth millions of dollars per year.

97.    Pursuant to that agreement, CoreCivic assumed an obligation to provide detainees adequate medical care, proper sleeping quarters, and proper nutrition. As such, the US DOJ-CoreCivic contract was intended to confer a "benefit" on detainees,  including the Plaintiff.

98.    CoreCivic failed miserably in honoring its duties under its contract with US DOJ to Mr. Valenzuela-Roman.

99.    CoreCivic's failure to honor its contractual obligations, as they pertained to Mr. Valenzuela-Roman directly and proximately caused his damages.

100.    As a result of the foregoing actions or inactions, Plaintiff suffered the following damages:

a.    Injury to his face and eyes.

b.    The pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future;

c.    The reasonable expenses of necessary medical care and services for the injury that resulted in Mr. Valenzeula-Roman.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

1.    Injunctive and declaratory relief declaring defendants' conduct unconstitutional and barring such conduct in the future;

2.    Compensatory and punitive damages;

3.     Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

4.     Such other and further relief as the Court deems just.

WHEREFORE, Plaintiff asks this Court to enter a Judgment in his favor.

PLAINTIFF DEMANDS A JURY TRIAL

Respectfully submitted this Seventeenth day of February, 2025.

s/Joy Bertrand
Joy Bertrand
Attorney for Plaintiff