**Joy Bertrand, Esq.**
PO Box 2734
Scottsdale, Arizona 85252-2734
Telephone:  602-374-5321
Fax:  480-361-4694
joyous@mailbag.com
www.joybertrandlaw.com
Arizona State Bar Number 024181

**ATTORNEY FOR PLAINTIFF**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Idelfonso Valenzuela-Roman.;**<br>    **Plaintiff,**<br><br>    **v.**<br><br>**Jane and John Doe US Department of Justice Employees;  CoreCivic, Inc.; John and Jane Doe CoreCivic Employees;  and ABC Corporations;**<br>    **Defendants.** | **Case No. CV-25-00546-ROS (CDB)**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF (JURY TRIAL DEMANDED)** |

NOW COMES Ildefonso Valenzuela-Roman to submit his First Amended Complaint for Damages, Equitable Relief, and Injunctive Relief.  He further submits the following:

## THE PARTIES

**I.      The Plaintiff.**

1.      Mr. Valenzuela-Roman is a Mexican National, currently residing in Mexico.

2.      Mr. Valenzuela-Roman was released from the custody of the U.S. Bureau of Prisons on or about March 10, 2025.

3.      At all times relevant to the events set forth in this Complaint, the Plaintiff was detained, pre-sentenced at the Central Arizona Federal Correctional Complex in Florence, Arizona.

**II.      The Defendants.**

4.      The Defendants are comprised of employees of United States Department of Justice (US DOJ), a private corporation that contracts with US DOJ to run pre-trial detention centers, and that private corporation's employees.

5.      For claims that are governed by the Federal Tort Claims Act (FTCA), the Plaintiff has filed FTCA claim with the United States on or about February 12, 2025.

6.      A copy of that FTCA submission is attached as an Exhibit to this Complaint and its allegations are incorporated by reference.

7.      As of the filing of this First Amended Complaint, the United States has not responded to the Plaintiff's FTCA notice of claim.

8.     If the United States chooses not to resolve those claims short of litigation or if the United States does not respond to the Plaintiff's FTCA notice of claim within the six months allowed under , then he will amend this First Amended Complaint to include those claims.

9.     This First Amended Complaint names John and Jane Doe USDOJ employees, whose identities the Plaintiff expects to learn through discovery.

10.     The John and Jane Doe USDOJ employees are employees of the United States Marshal's Service, a subdivision of the USDOJ.

11.     The John and Jane Doe USDOJ employees are sued in their individual capacities.

12.     Their identities are currently unknown; Plaintiff will amend the complaint upon discovery of their names.

13.     The John and Jane Doe USDOJ employees are sued, in part, for their violation of Mr. Valenzuela-Roman's Fifth and Fourteenth Amendment rights, pursuant to *Bivens v. Six Unnamed Agents*, 403 U.S. 388 (1971).

14.     The First Amended Complaint also names John and Jane Doe CoreCivic employees, whose identities the Plaintiff expects to learn through discovery.

15.     The corporate defendant is CoreCivic, Inc., a for-profit corporation that provides detention facility management services to US DOJ.

16.     Defendant CoreCivic, Inc., is a Maryland corporation with its principal place of business at 10 Burton Hills Blvd, Nashville, Tennessee 37125.

17.     CoreCivic contracts with the United States Department of Justice to house persons held in custody pre-sentencing by the Arizona United States District Court.

18.     That contract covers CoreCivic's management of the Florence Correctional Complex, where Mr. Valenzuela was injured.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction over this matter pursuant to 28 USC § 1331, because Plaintiff's claims arise under the Constitution, laws, or treaties of the United States.

20.     As to Mr. Valenzuela-Roman's claims against CoreCivic and its employees, this Court also has diversity jurisdiction, pursuant to 28 USC § 1332.

21.     Because Mr. Valenzuela-Roman alleges permanent injury to his face and eyes, his claims meet or exceed the $75,000 amount in controversy requirement of § 1332.

22.     As to the Individual U.S. Department of Justice Defendants, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), because Plaintiffs' claims arise under the Fifth and Fourteenth Amendments to the United

States Constitution, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. §§ 1985 and 1986.

23.    For state law tort claims raised in this Complaint, Plaintiff relies upon the law of the jurisdiction in which his injury occurred – Arizona.  This Court has jurisdiction over these claims, pursuant to 28 U.S.C. § 1367.

24.    This Court has personal jurisdiction over the Defendants in this matter and the underlying acts of this complaint took place in the District of Arizona.

25.    Venue in this district is proper under 42 U.S.C. § 1391, because, as described below, the acts or omissions giving rise to the Plaintiffs' claims took place in Arizona.

## STATEMENT OF FACTS

26.    The U.S. Marshals Service is responsible for maintaining custody of individuals detained pending trial or sentencing for federal criminal offenses.

27.    In fiscal year 2020, the Marshals received over 160,000 individuals into its custody and, on average, had custody over 62,000 individuals every day.[1]

---

[1] *Rivera v. Corrections Corporation of America*, 999 F.3d 647, 649 (9th Cir. 2021), citing U.S. Marshals Serv., FY 2020 Annual Report 47–48 (2021), https://www.usmarshals.gov/foia/annual-report-2020.pdf.

28.     Because the U.S. Marshal's Service does not own or operate any detention facilities, it places those in its custody in facilities run by other entities.[2]

29.     The U.S. Marshal's Service detains the vast majority—around 85 percent—of those in its custody outside the federal system, through approximately 1,200 contracts with state, local, and private facilities.[3]

30.     The U.S. Marshal's Service often contracts with private prison companies, such as CoreCivic, to provide those detention services.

31.     CoreCivic, formerly Corrections Corporation of America, operates private prisons, detention centers, and other correctional facilities throughout the United States.[4]

32.     CoreCivic manages an estimated 39 percent of the country's private prison beds.[5]

33.     CoreCivic manages an estimated 39 percent of the country's private prison beds.

---

[2] *Rivera*, 999 F.3d at 649, citing U.S. Marshals Serv., Prisoner Operations 2 (2021), https://www.usmarshals.gov/duties/factsheets/prisoner_ops.pdf.

[3] *Rivera*, 999 F.3d 649-50.

[4] *Id*. at 650.

[5] *Id*., citing CoreCivic, 2020 Annual Report, Form 10-K 14 (2021), http://ir.corecivic.com/static-files/2d02c7d4-786a-4a48-8c1b-3e2522c511f3.

34.    At the end of 2020, the U.S. Marshal's Service was the primary customer at eight of CoreCivic's forty-seven facilities, and contracts with the Marshals accounted for 21 percent—$396.3 million—of CoreCivic's 2020 revenue.

35.    One of those contracts between the U.S. Marshal's Service and CoreCivic is for the operation and management of the Central Arizona Federal Correctional Complex (hereinafter "FCC") in Florence, Arizona.

36.    CoreCivic owns the FCC.

37.    Nearly $400 million worth of U.S. Marshal's Service business accounted for 21% of CoreCivic's revenues in 2020, according to CoreCivic's annual Securities and Exchange Commission report.

38.    By 2022, the U.S. Marshal's Service was paying for-profit prison companies to operate 48 facilities with total average daily populations of 20,827 people —nearly a third of the total population in U.S. Marshal's Service custody.[6]

---

[6] American Civil Liberties Union, Letter to Ronald L. Davis, Director, United States Marshal's Service, September 18, 2023, available at https://assets.aclu.org/live/uploads/2023/09/2023.09.15-FINAL-ACLU-Letter-on-USMS-Failure-to-Comply-with-EO-14006.pdf (last visited February 17, 2025).

39.    At the end of 2020, the U.S. Marshal's Service was the primary customer at eight of CoreCivic's forty-seven facilities, and contracts with the Marshals accounted for 21 percent—$396.3 million—of CoreCivic's 2020 revenue.[7]

40.    Companies such as CoreCivic deny engaging in lobbying efforts, but private prison corporations such as CoreCivic routinely specifically target legislators over immigration "reform."

41.    By 2015, CoreCivic derived 51% of its revenue from federal contracts.

42.    CoreCivic (previously known as CCA) has a lengthy history of refusing to provide adequate medical treatment to those it houses.[8]

43.    CoreCivic has repeatedly been the subject of investigations and lawsuits regarding delayed health care to inmates and detainees, often resulting in death.[9]

---

[7] *Rivera*, 999 F.3d at 650, citing CoreCivic, 2020 Annual Report, Form 10-K 7, 15 (2021), http://ir.corecivic.com/static-files/2d02c7d4-786a-4a48-8c1b-3e2522c511f3.

[8] *See, e.g.*, *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-2267, 2019 WL 1399600, at *2 (M.D. Tenn. March 26, 2019) (shareholder class certified alleging CoreCivic's "failure to provide sufficient medical services to its inmates."); *Dodson v. CoreCivic*, No. 3:17-CV-00048, 2018 WL 4800836, at *1 (M.D. Tenn. Oct. 3, 2018) (alleging deliberate inference to prisoners medical needs); *Pierce v. D.C.*, 128 F. Supp.3d 250, 284 (D.D.C. 2015) (finding prisoner's ADA and Section 504 rights violated at CoreCivic facility).

[9] Seth Freed Walker, "Federal Officials Ignored Years of Internal Warnings About Deaths at Private Prisons," *The Nation*, June 15, 2016, available at https://www.thenation.com/article/archive/federal-officials-ignored-years-of-

**I.       CoreCivic's and the US DOJ's Operating Agreement.**

44.       The Operating Agreement that controls CoreCivic's detention of federal inmates at FCC prohibits US Marshal's Service detainees "from operating equipment that may expose the detainees to great bodily harm."[10]

45.       The Operating Agreement also provides:

> Prisoners or detainees shall not be used to perform the responsibilities or duties of an employee of the Contractor. Appropriate safety/protective clothing and equipment shall be provided to prisoners or detainees as appropriate. Prisoners or detainees shall not be assigned work that is considered hazardous or dangerous. This includes, but is not limited to, areas or assignments requiring great heights, extreme temperatures, use of toxic substances and unusual physical demands.[11]

---

internal-warnings-about-deaths-at-private-prisons/  (last visited January 17, 2025). "At least 38 men died in the BOP's privately run prisons from 1998 to 2014 in the wake of inadequate medical care. An examination of thousands of pages of previously unreleased files revealed that gravely ill prisoners had been left untreated, or relegated to the care of low-level medical workers. In some facilities, inmates went months without seeing a doctor. Some prisoners who required emergency care were not transferred to a hospital, in an apparent attempt to save costs . . . In a striking confirmation of these findings, the new records show that BOP monitors documented, between January 2007 and June 2015, the deaths of 34 inmates who were provided substandard medical care. Fourteen of these deaths occurred in prisons run by CCA [the prior corporate name for CoreCivic."

[10]  Operating Agreement Section C.8.6.

[11]  Operating Agreement at C.8.6.

46.    The Operating Agreement also requires CoreCivic to comply with the US Marshal's Service' Federal Performance Based Detention Standards.[12]

47.    Those standards include the requirement that inmates requiring medical care outside of the facility "are transferred under appropriate security to a facility to a facility where such care is available."[13]

48.    For non-emergency care off site, the US Marshal's Service requires that prisoners receive pre-authorization of the US Marshal's Service to ensure consistency with its prisoner Health Care Standards.[14]

**II.    Mr. Valenzuela-Roman's Injuries.**

49.    On February 17, 2023, Mr. Valenzuela-Roman was held as a federal pre-trial detainee in the Central Arizona Florence Correctional Complex.

50.    To earn money to buy incidentals, Mr. Valenzuela-Roman worked as a porter for one dollar per day.

51.    His work as a porter included assisting with cleaning the facility.

---

[12] Operating Agreement at C.2.1.

[13]  USMS Federal Detention Standards, B.4.7, available at https://www.usmarshals.gov/sites/default/files/media/document/detention-standards.pdf (last visited February 17, 2025).

[14]  *Id.*

52.    On February 17, 2023, a female CoreCivic guard – Jane Doe One -- whose name the Plaintiff expects will be identified in the course of discovery, directed Mr. Valenzuela to transfer a caustic cleaning chemical from a large, one-gallon jug to smaller cleaning bottles.

53.    On information and belief, this cleaning chemical was intended to be used on hard surfaces in the bathrooms and living areas of the facility.

54.    On information and belief, this cleaning chemical was similar in strength and danger to bleach.

55.  CoreCivic guard Jane Doe One did not provide any protective gear to Mr. Valenzuela-Roman when she directed him to transfer the chemical from the gallon jug to the smaller jugs.

56.    Mr. Valenzuela-Roman, following Jane Doe One's direction, began to transfer the chemical from the large jug to the smaller bottles, all without eye or skin protection.

57.    In the course of transferring the chemical, the substance splashed into Mr. Valenzuela's eyes and onto his face.

58.    The caustic chemical burned his eyes and skin.

59.    Jane Doe CoreCivic Guard One saw the chemical splash onto Mr. Valenzuela-Roman.

60.    Jane Doe CoreCivic Guard One tried to render first aid treatment and took Mr. Valenzuela-Roman to the FCC's infirmary.

61.    At the infirmary, Mr. Valenzuela-Roman received no burn care for either his skin or his eyes.

62.    The CoreCivic John and Jane Does working in the FCC infirmary refused to provide Mr. Valenzuela-Roman burn care, giving him only over-the-counter pain medication and a salve to put on his burns.

63.    Mr. Valenzuela-Roman's CJA counsel brought these injuries to the attention of CoreCivic and the US Marshal's Service on February 22, 2023.[15]

64.    The following day, CoreCivic responded that it had given Mr. Valenzuela-Roman an x-ray and Tylenol.[16]

65.    CoreCivic also stated on February 23, 2023 that Mr. Valenzuela-Roman was "scheduled to see a provider."[17]

66.    The U.S. Marshal's Service John and Jane Does took no action to ensure that Mr. Valenzuela received timely, effective burn treatment.

---

[15] *Id*. at 2.

[16] *Id*.

[17] *Id*.

67. These burns were observed by this CJA panel attorney on March 10, 2023. In a motion to the Court, CJA counsel described "open wounds oozing blood" on Mr. Valenzuela-Roman's face.[18]

68. CJA Counsel further documented to the Court delayed medical care for these burns.

69. CJA Counsel contacted CoreCivic again on March 10, 2023, noting his observation that Mr. Valenzuela-Roman's face had wounds oozing blood.[19]

70. CJA Counsel noted to the Court that on March 1, 2023, CoreCivic denied Mr. Valenzuela-Roman's grievances about this delay in his medical care, because he had written in the margins of the grievance form – Mr. Valenzuela-Roman's vision injury nothwithstanding.

71. On March 11, 2023, CoreCivic responded that an optometry referral was made on March 10, 2023.

72. Mr. Valenzuela-Roman now claims that the injuries sustained at the facility, where the US Marshal's Service holds the pretrial detainees for the Arizona District Court, are permanent.

---

[18] *United States v. Valenzuela-Roman*, Arizona District Court Number 22CR2566-DWL, ECF Doc. 24 at 1.

[19] *Id.*

73.    These injuries were exacerbated by CoreCivic's and the USDOJ's John and Jane Doe employees delaying and denying medical care for these injuries.

## PLAINTIFF'S CAUSES OF ACTION AGAINST DEFENDANTS

### COUNT ONE
### VIOLATION OF THE FIFTH AMENDMENT
**(Defendants John and Jane Doe U.S. DOJ Employees;  CoreCivic;  John and Jane Doe CoreCivic Employees;  and ABC Corporations )**

74.    Plaintiff re-alleges each and every paragraph, *supra,* as if fully alleged herein.

75.    At all relevant times, all US DOJ John and Jane Doe Defendants were federal actors and were acting under color of federal law.

76.    At all relevant times, all CoreCivic John and Jane Doe Defendants were federal actors and were acting under color of federal law.

77.    Mr. Valenzuela-Roman had a bodily integrity interest under the Due Process Clause of the Fifth Amendment.

78.     By failing to provide timely, necessary medical care for his chemical burns, the Defendants violated Mr. Valenzuela-Roman's Fifth Amendment rights.

### COUNT TWO
### CONSPIRACY TO VIOLATE OF THE FIFTH AND FOURTEENTH AMENDMENT
### (DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS)
**(Defendants John and Jane Doe U.S. DOJ Employees;  John and Jane Doe CoreCivic Employees)**

79.    Plaintiff re-alleges each and every paragraph, *supra*, as if fully alleged herein.

80.    The Defendants who have participated in this conspiracy include are the USDOJ Jane and John Does, and the CoreCivic Jane and John Does.

81.    The private entity and individuals who conspired with government actors to violate Mr. Valenzuela-Roman's Fifth and Fourteenth Amendment rights are CoreCivic and the CoreCivic Jane and John Does.

82.    The extent of the unlawful conspiracy, includes, but is not limited to deliberate delay and denial of medical care for Mr. Valenzuela-Roman's chemical burns.

83.    At all relevant times, all Defendants were federal actors and were acting under color of federal law.

84.    The Defendants' failure to provide Mr. Valenzuela-Roman timely, necessary medical care for his chemical burns, the Defendants violated his Fifth and Fourteenth Amendment rights.

85.    Defendants' deliberate indifference to Mr. Valenzuela-Roman's serious medical needs are consistent with the Defendants' demonstrated policy and practice of deliberate indifference to the serious medical needs of persons in the US Marshal's Service's and CoreCivic's care, custody, and control.

86.    Despite these reports, these Defendants have taken no effective steps to eliminate or mitigate the delays and denial of care.

## COUNT TWO
## NEGLIGENCE
**(Defendants CoreCivic; John and Jane Doe CoreCivic Employees; ABC Corporations)**

87.    Plaintiff re-alleges each and every paragraph, *supra*, as if fully alleged herein.

88.    Here, the Defendants were negligent in four, distinct ways.

89.    First, the Defendants were negligent in requiring Mr. Valenzuela-Roman to work with dangerous chemicals.

90.    Second, the Defendants were negligent in not providing Mr. Valenzuela-Roman the proper protective equipment or clothing when working with dangerous chemicals.

91.    Third, the Defendants were negligent in denying or delaying Mr. Valenzuela-Roman critical medical care immediately when he was injured.

92.     Fourth, the Defendants were negligent in denying or delaying Mr. Valenzuela-Roman critical medical care in the weeks after the injury, despite his requests for medical care.

## COUNT THREE
## AGGRAVATED NEGLIGENCE
**(Defendants CoreCivic; John and Jane Doe CoreCivic Employees; ABC Corporations)**

93.    Plaintiffs re-allege each and every paragraph, *supra*, as if fully alleged herein.

94.    Defendants committed aggravated negligence in two, distinct ways.

95.    First, Defendants knew that work with dangerous chemicals, without proper protective equipment, involved a high probability that such harm would result.

96.    Second, Defendants knew that denying or delaying medical care for chemical burns would not only create an unreasonable risk of bodily harm to Mr. Valenzuela-Roman, but also involved a high probability that such harm would result.

97.    Despite the fact that the Defendants knew or had reason to know their conduct would probably result in harm, they nonetheless engaged in that conduct, which ultimately resulted in harm to Plaintiffs.

98.    A reasonable person in Defendants' position would have known or would have had reason to know that their actions created an unreasonable risk of harm and the risk was so great that it was probable that harm would result.

99.     As a result of Defendants' wanton and reckless acts and omissions, Plaintiffs suffered damages in an amount to be proven at trial, including but not limited to pecuniary damages, pain and suffering, and emotional distress.

## COUNT FOUR

**NEGLIGENT SUPERVISION OR TRAINING OF EMPLOYEES**
**(Defendant CoreCivic)**

100.    Plaintiffs re-allege each and every paragraph, *supra*, as if fully alleged herein.

101.    The CoreCivic employees' failures to ensure Mr. Valenzuela-Roman's safety while working, *supra*, was the direct and proximate result of the United States' and CoreCivic's failure to properly supervise and train their employees.

102.    The CoreCivic employees' failures to provide effective, timely medical care for Mr. Valenzuela's chemical burns, *supra*, was the direct and proximate result of CoreCivic's failure to properly supervise and train their employees.

103.    A reasonable person in CoreCivic's position would have known or would have had reason to know that its employees' actions created an unreasonable risk of harm and the risk was so great that it was probable that harm would result.

**COUNT FIVE**
***RESPONDEAT SUPERIOR* LIABILITY**
**(Defendant CoreCivic)**

104.    Plaintiff re-alleges the foregoing paragraphs as if fully alleged herein.

105.    The conduct of the United States' and CoreCivic's employees, occurred while they were acting within the ordinary scope of their employment.

106.    As such, the United States and CoreCivic are responsible for Mr. Valenzuela-Roman's injuries under the *respondeat superior* doctrine.

107.    As a result of the foregoing actions or inactions of the Defendants, Plaintiff suffered the following damages:

a.    Injury to his face and eyes.

b.    The pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future;

c.    The reasonable expenses of necessary medical care and services for the injury that resulted in Mr. Valenzeula-Roman.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

1.    Injunctive and declaratory relief declaring defendants' conduct unconstitutional and barring such conduct in the future;

2.    Compensatory and punitive damages;

3.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

4.    Such other and further relief as the Court deems just.

WHEREFORE, Plaintiff asks this Court to enter a Judgment in his favor.

PLAINTIFF DEMANDS A JURY TRIAL

Respectfully submitted this Second day of May, 2025.

s/Joy Bertrand
Joy Bertrand
Attorney for Plaintiff