SC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Idelfonso Valenzuela-Roman,

Plaintiff,

v.

United States, et al.,

Defendants.

No.    CV-25-00546-PHX-ROS (CDB)

**ORDER**

On February 17, 2025, Plaintiff Idelfonso Valenzuela-Roman, who is represented by counsel, filed a Complaint pursuant to the Federal Tort Claims Act (FTCA), *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and state law, and paid the filing and administrative fees for this action. In an April 2, 2025, Order, the Court dismissed the Complaint with leave to amend.

Plaintiff has filed a First Amended Complaint (Doc. 4)[1] asserting both federal question and diversity subject matter jurisdiction.[2]  The Court will require Defendant CoreCivic to respond to portions of the First Amended Complaint as set forth herein and will dismiss the remaining Defendants and claims.

**I.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[2] Plaintiff also alludes to asserting claims under 42 U.S.C. §§ 1985 and 1986 but he has alleged no claims under those provisions.

TERMPSREF

against a governmental entity or an officer or an employee of a governmental entity, regardless of whether the prisoner is represented by counsel. 28 U.S.C. § 1915A(a); *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) ("District courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as [§ 1915A] does not differentiate between civil actions brought by prisoners."). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

## II. First Amended Complaint

In his six-count First Amended Complaint,[3] Plaintiff names as Defendants an

---

[3] Plaintiff includes two Count Twos. The Court refers to them as Count Two (A) and Count Two (B).

unspecified number of John and Jane Doe employees of the United States Department of Justice ("DOJ Does"); CoreCivic, a private entity that operates the Central Arizona Federal Correctional Complex under contract with the United States Marshals Service (USMS); an unspecified number of John and Jane Doe CoreCivic employees ("CoreCivic Does"); and ABC Corporations. Plaintiff seeks equitable, injunctive, compensatory, and punitive relief as well as reasonable attorney's fees and costs.

Plaintiff alleges that at relevant times, he was detained at the Central Arizona Federal Correctional Complex (FCC) in Florence, Arizona, which CoreCivic operates pursuant to a contract with the USMS. Plaintiff appears to have been held as a pretrial detainee from approximately November 4, 2022 to April 13, 2023.[4]

Except as otherwise indicated, Plaintiff further alleges the following:

On February 17, 2023, Plaintiff was assigned to work as a porter, which included assisting with cleaning the facility. An unknown CoreCivic guard, Jane Doe 1, directed Plaintiff to transfer a caustic cleaning chemical from a one-gallon jug into smaller cleaning bottles. Jane Doe 1 did not provide protective gear to Plaintiff. As Plaintiff poured the chemical from the jug into the smaller bottles, the chemical splashed into his eyes and onto his face, causing burning. Jane Doe 1 saw that the chemical had splashed Plaintiff in the face and attempted to render aid before taking Plaintiff to the infirmary. Plaintiff received a salve for his facial burns and over-the-counter pain medication. CoreCivic Does in the infirmary otherwise refused to provide him burn care.

On February 22, 2023, Plaintiff's Criminal Justice Act (CJA) counsel brought Plaintiff's injuries to the attention of CoreCivic and the USMS. The next day, CoreCivic reported that it had given Plaintiff Tylenol and an x-ray[5] and, a day later, reported that

---

[4] On November 4, 2022, Plaintiff was charged with illegal reentry after deportation. *See United States v. Valenzuela-Roman*, CR 22-02566-TUC-JCH (D. Ariz. Nov. 4, 2022). On April 13, 2023, Plaintiff was sentenced to prison for eight months followed by three years on supervised release. *Id.*, Doc. 32. On January 5, 2024, a petition to revoke supervised release was filed. *Id.*, Doc. 33. According to his First Amended Complaint, Plaintiff was released from custody on March 10, 2025.

[5] The x-ray was apparently taken in connection with an unrelated incident that had occurred more than a year earlier. CR 22-02566, Doc. 24 at 1.

Plaintiff was scheduled to be seen by a provider. The DOJ Does took "no action" to ensure that Plaintiff received timely and effective burn treatment. (Doc. 4 ¶ 66.) On March 1, 2023, CoreCivic denied Plaintiff's grievances concerning the delay in medical care because he had written in the margins of the form. On March 10, 2023, Plaintiff's CJA counsel met with Plaintiff and observed his burns. In a motion filed in Plaintiff's criminal case, CJA counsel described Plaintiff as having "open wounds oozing blood" on his face and noted the delay in Plaintiff receiving medical care for his burns. (*Id.* ¶¶ 67-68; *see* CR 22-02566, Doc. 24.) On March 11, 2023, CoreCivic responded to CJA counsel stating that an optometry appointment had been made the day before.

On March 28, 2023, Judge Hinderaker held a hearing regarding CJA counsel's motion concerning Plaintiff's medical care. CR 22-02566, Doc. 27.

Plaintiff alleges that his eyes are permanently damaged and that delays in ensuring appropriate medical care for his burns exacerbated the extent of his injuries. Further, he alleges that under the terms of an operating agreement between the USMS and CoreCivic, prisoners or detainees were not to perform the responsibilities of CoreCivic and were not to be assigned to work considered hazardous or dangerous, including the use of toxic substances. (Doc. 4 ¶¶ 44-45.) In addition, he alleges that CoreCivic was required to comply with the USMS Federal Detention Based Detention Standards, which requires that inmates requiring medical care outside a facility be transferred to where such care can be provided. (*Id.* ¶¶ 47-48.)

Plaintiff designates **Count One** as a claim for violation of his Fifth Amendment Due Process right to bodily integrity against the DOJ Does, CoreCivic, the CoreCivic Does, and the ABC Corporations. He claims these Defendants violated his Fifth Amendment rights by failing to timely provide necessary medical care for his chemical burns.

Plaintiff designates **Count Two (A)** as a claim for conspiracy to violate his Fifth Amendment rights against the DOJ Does and the CoreCivic Does.[6] He claims they

_____

[6] Although Plaintiff also alleges that DOJ Does and CoreCivic Does violated his Fourteenth Amendment rights, the Fourteenth Amendment applies to a defendant alleged to have acted under color of *state* law. Plaintiff alleges no facts to support that any of these

conspired to deliberately delay and deny medical care for his chemical burns and thereby acted with deliberate indifference to his serious medical needs, consistent with the demonstrated policies of the USMS and CoreCivic towards the serious medical needs of those in their custody.

Plaintiff designates **Count Two (B)** as a state law claim for negligence against Defendants CoreCivic, the CoreCivic Does, and ABC Corporations. Plaintiff alleges these Defendants acted negligently by requiring Plaintiff to work with dangerous chemicals without providing him appropriate protective equipment or clothing, by failing to provide prompt appropriate medical care for Plaintiff's injuries, and by failing to provide appropriate medical care in the weeks after Plaintiff was injured, despite his requests.

Plaintiff designates **Count Three** as a state law claim for aggravated negligence[7] against CoreCivic, CoreCivic Does, and ABC Corporations. He alleges these Defendants knew that working with dangerous chemicals without protective equipment involved a high probability that harm would result. He further alleges reasonable people in Defendants' positions would have known that delaying and denying medical care for chemical burns would create an unreasonable risk of bodily harm to Plaintiff and involved a high probability of such harm.

Plaintiff designates **Count Four** as a claim for negligent supervision against Defendant CoreCivic. He alleges that the failure of the CoreCivic Does to ensure Plaintiff's safety was a direct and proximate result of USMS and CoreCivic's failure to properly supervise and train their employees and that the CoreCivic Does' failures to provide prompt and appropriate medical care for Plaintiff's chemical burns was likewise a direct and proximate result of CoreCivic's failure to properly supervise and train its

Defendants acted under color of state, rather than federal, law. Accordingly, the Court construes Count Two (A) as arising solely under the Fifth Amendment.

[7] In *DeElena v. Southern Pacific Company*, 592 P.2d 759, 763 (Ariz. 1979), the Arizona Supreme Court noted that "wanton misconduct is aggravated negligence." *See also Williams v. Thude*, 934 P.2d 1349, 1351 (Ariz. 1997) ("willful, wanton, and reckless conduct have commonly been 'grouped together as an aggravated form of negligence,'" quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 34, at 212 (5th ed.1984)).

employees. Plaintiff claims that a reasonable person in CoreCivic's position would have known that its employees' acts and omissions created an unreasonable risk of harm and that such risk was probable.

Plaintiff designates **Count Five** as a *respondeat superior* claim against Defendant CoreCivic.[8] He contends that he suffered injuries to his eyes and face; pain, anguish, and shock, which he has suffered and is reasonably likely to suffer in the future, and that resulted in reasonable expenses for necessary medical care.

## III.   *Bivens* **Claims**

In Counts One and Two (A), Plaintiff asserts *Bivens* claims against the DOJ Does and the CoreCivic Does, in their individual capacities, for violations of his Fifth Amendment rights. He also alleges that CoreCivic and the ABC Corporations violated his Fifth Amendment rights. Specifically, Plaintiff alleges that his Fifth Amendment right to bodily integrity was violated.

### A. CoreCivic, CoreCivic Does, and ABC Corporations

Plaintiff alleges *Bivens* claims against CoreCivic, the CoreCivic Does, and the ABC Corporations. A remedy does not exist under *Bivens* against private companies acting under color of federal law in operating a prison or a detention center. *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 63 (2001). Likewise, a remedy does not exist under *Bivens* against privately employed personnel working at a privately operated federal prison or detention center. *See Minneci v. Pollard*, 565 U.S. 118, 131 (2012) ("[W]here . . . a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort

---

[8] Plaintiff also alleges that the United States is responsible for his injuries based upon *respondeat superior*. Even if Plaintiff had named the United States as a Defendant, there is no *respondeat superior* liability under *Bivens*, and therefore, a defendant's position as the supervisor of persons who allegedly violated a plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." ).

law . . . , the prisoner must seek a remedy under state tort law.  We cannot imply a *Bivens* remedy in such a case.").  Accordingly, Plaintiff cannot maintain a *Bivens* action against Defendants CoreCivic, the CoreCivic Does, or the ABC Corporations, and Plaintiff's *Bivens* claims in Counts One and Two (A) will be dismissed as to these Defendants.

### B. Availability of Damages Under *Bivens*

Since the Supreme Court decided in *Bivens* that a plaintiff could seek damages for a violation of the Fourth Amendment prohibition on illegal searches and seizures, 403 U.S. at 396-97, it has only recognized *Bivens* claims in two other cases—*Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980).  In *Davis*, the Court held that a cause of action existed under *Bivens* for an administrative assistant's claim that a Congressman had discriminated against her because of her gender, in violation of the Fifth Amendment's Due Process Clause.  *Davis*, 442 U.S. at 230-31.  In *Green*, the Court recognized a *Bivens* remedy in a case involving an Eighth Amendment claim against federal prison officials for failing to treat plaintiff's decedent for asthma.  *Green*, 446 U.S. at 16-18.  "These three cases . . . represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."  *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017); *see also Egbert v. Boule*, 596 U.S. 482, 486 (2022) ("Over the past 42 years, however, we have declined 11 times to imply a similar cause of action for other alleged constitutional violations.").  Both the Ninth Circuit and the Supreme Court have held that just because a claim arises under the same amendment as one of the three recognized *Bivens* cases, it does not automatically mean that the claim arises in the same context: "[S]imilar allegations . . . almost parallel circumstances, or a similar 'mechanism of injury' as *Bivens* are not enough to support the judicial creation of a cause of action."  *Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023) (quoting *Egbert*, 596 U.S. at 495) (internal quotations omitted).

Although the Supreme Court has not "dispense[d] with *Bivens* altogether," it has "emphasized that recognizing a cause of action under Bivens is 'a disfavored judicial activity.'"  *Egbert*, 596 U.S. at 483 (quoting *Ziglar*, 582 U.S. at 135).  In *Ziglar*, the

Supreme Court set forth a two-part test to determine whether a *Bivens* claim may proceed: a court first must consider whether the claim at issue extends *Bivens* in a new context from previously established *Bivens* cases, and, if so, a court must then apply a "special factors analysis" to determine whether there are "special factors counselling hesitation" in expanding *Bivens*.  *Ziglar*, 582 U.S. at 135.  These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492.  A court "must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies 'should be augmented by the creation of a new judicial remedy.'" *Id.* at 494 (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)).  "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?  The answer most often will be Congress." *Ziglar*, 582 U.S. at 135 (quoting *Bush*, 462 U.S. at 380).

"When an issue 'involves a host of considerations that must be weighed and appraised,' it should be committed to 'those who write the laws' rather than 'those who interpret them.'" *Id.* (quoting *Bush*, 462 U.S. at 380).  "[I]f there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate[,]'. . . or even if there is the 'potential' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Egbert*, 596 U.S. at 484 (citation omitted); *Harper v. Nedd*, 71 F.4th 1181, 1185-86 (9th Cir. 2023).

Plaintiff's *Bivens* claims arise in a different context than the three cases in which the Supreme Court has approved an implied damages remedy under the Constitution. Plaintiff has not demonstrated, nor does it otherwise appear, that the courts, rather than Congress, should decide whether an implied damages remedy for his Fifth Amendment claims should be available.  Accordingly, the Court will dismiss Plaintiff's *Bivens* claims in Counts One and Two (A).

### III.    Injunctive Relief under 28 U.S.C. § 1331

Section 1331, 28 U.S.C., "provides jurisdiction for the exercise of the traditional powers of equity in actions arising under federal law.  No more specific statutory basis is

required." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1232 (10th Cir. 2005); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) (recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (recognizing an implied cause of action for equitable relief where plaintiffs alleged unconstitutional conditions of confinement and invoked § 1331). Thus, a plaintiff can, in some instances, bring a non-*Bivens* action for injunctive relief to stop ongoing constitutional violations. *Pinson v. Othon*, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020).

To bring this type of non-*Bivens* claim, a prisoner must: (1) invoke jurisdiction under § 1331, (2) allege facts to state a colorable ongoing constitutional claim, (3) name as a defendant the person who would be responsible for carrying out any order for injunctive relief, and (4) request particular injunctive relief that is specifically targeted to resolving the ongoing constitutional violation. *Id.* (citing *Bacon v. Core Civic*, No. 2:20cv00914, 2020 WL 3100827, at *6 (D. Nev. June 10, 2020); *see also, e.g., Norton v. Kwon*, No. 22cv00109, 2023 WL 3042281, at *7 (D. Haw. Apr. 21, 2023).

Plaintiff alleges that he seeks injunctive and equitable relief. But even assuming Plaintiff alleges an ongoing constitutional violation, he has not named as a defendant a person who would be responsible for carrying out any order for injunctive relief. Accordingly, Plaintiff fails to state a claim for injunctive and equitable relief in his First Amended Complaint and his request for such relief will be dismissed.

## IV.    State Law Claims

Plaintiff asserts state law claims against Defendants DOJ Does, CoreCivic, the CoreCivic Does, and the ABC Corporations based upon diversity subject matter jurisdiction.[9] Plaintiff alleges at least $75,000 in damages, that he is a Mexican National, and that CoreCivic is a Maryland corporation with its principal place of business in Tennessee. Plaintiff does not allege the citizenship of the CoreCivic Does or the ABC

---

[9] Because Plaintiff fails to state a federal claim against any Defendant, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

Corporations.  Nevertheless, at this juncture, given Plaintiff's Mexican citizenship and the CoreCivic Does' employment pursuant to a contract with the USMS, it appears likely that the citizenship of the CoreCivic Does and the ABC Corporations is diverse from Plaintiff's.  In any event, these Defendants are being dismissed with leave to amend.  As a result, the remaining parties, Defendant CoreCivic and Plaintiff are completely diverse.  If Plaintiff seeks leave to amend his First Amended Complaint to cure the failure to state a claim against Defendants CoreCivic Does and ABC Corporations, he must also allege the citizenship of these Defendants if he again predicates his claims against them on diversity subject matter jurisdiction.

### A.  Defendants DOJ Does

Plaintiff's remedy for alleged negligence of federal employees acting within the scope of their employment, such as the DOJ Does, is under the FTCA.  *See Hui v. Casteneda*, 559 U.S. 799, 801-802 (2010).  Accordingly, Plaintiff's state law claims against the DOJ Does will be dismissed.

### B.  CoreCivic Does and ABC Corporations

Plaintiff sues an unspecified number of fictitiously identified Defendants, i.e., CoreCivic employees and ABC Corporations.  Rule 10(a) of the Federal Rules of Civil Procedure requires a plaintiff to include the names of the parties in the action, and although plaintiffs may be given an opportunity through discovery to identify unknown defendants, Plaintiff fails to allege specific facts to support that any fictitiously identified Doe may be liable under state law to Plaintiff.  Accordingly, the CoreCivic Does and ABC Corporations will be dismissed.

### V.   Claims for Which an Answer Will Be Required

Plaintiff's allegations in Counts Two (B), Three, Four, and Five are sufficient to state a claim against Defendant CoreCivic.  Accordingly, Defendant CoreCivic will be required to respond to Plaintiff's state law claims in Counts Two (B), Three, Four, and Five.

. . . .

TERMPSREF

**IT IS ORDERED:**

(1)    Counts One and Two (A) are **dismissed** without prejudice.

(2)    Defendants Department of Justice John and Jane Does, CoreCivic employees John and Jane Does, and ABC Corporations are **dismissed** without prejudice.

(3)    If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be filed on the court-approved form and retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(4)    Defendant CoreCivic must answer Counts Two (B), Three, Four, and Five.

(5)    If Plaintiff does not either complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(6)    Defendant CoreCivic must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(7)    This matter is **assigned to the standard track** pursuant to Rule 16.2(b)(3) of the Local Rules of Civil Procedure.

(8)    If properly completed, the Clerk of Court must issue proposed summons.

(9)    This matter is referred to Magistrate Judge Camille D. Bibles pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 21st day of October, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge

TERMPSREF

- 11 -