**Joy Bertrand, Esq.**
PO Box 2734
Scottsdale, Arizona 85252-2734
Telephone:  602-374-5321
Fax:  480-361-4694
joyous@mailbag.com
www.joybertrandlaw.com
Arizona State Bar Number 024181

**ATTORNEY FOR PLAINTIFF**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Idelfonso Valenzuela-Roman.;**<br>    **Plaintiff,**<br><br>    **v.**<br><br>**United States of America;  CoreCivic, Inc.;  John and Jane Doe CoreCivic Employees;  and ABC Corporations;**<br>    **Defendants.** | **Case No. CV-25-00546-ROS (CDB)**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, EQUITABLE RELIEF, AND INJUNCTIVE RELIEF (JURY TRIAL DEMANDED)** |

NOW COMES Ildefonso Valenzuela-Roman to submit his Second Amended Complaint for Damages.  He further submits the following:

**THE PARTIES**

**I.      The Plaintiff.**

1.      Mr. Valenzuela-Roman is a Mexican National, currently residing in Mexico.

2.      Mr. Valenzuela-Roman was released from the custody of the U.S. Bureau of Prisons on or about March 10, 2025.

3.      At all times relevant to the events set forth in this Complaint, the Plaintiff was detained, pre-sentenced at the Central Arizona Federal Correctional Complex in Florence, Arizona.

**II.     The Defendants.**

4.      The Defendants are comprised the United States of America;  a private corporation that contracts with US DOJ to run pre-trial detention centers;  and that private corporation's employees.

5.      For claims that are governed by the Federal Tort Claims Act (FTCA), the Plaintiff filed his FTCA claim with the United States on or about February 12, 2025.

6.      A copy of that FTCA submission is attached as an Exhibit to this Complaint and its allegations are incorporated by reference.

7.      As of the filing of this Second Amended Complaint, the United States has not responded to the Plaintiff's FTCA notice of claim.

8.      Because the United States chose not to respond to the Plaintiff's FTCA notice of claim within the six months allowed under 28 U.S.C. 2675, he amends his First Amended Complaint to include those claims.

9.      This Second Amended Complaint lists John and Jane Doe USDOJ employees, whose identities the Plaintiff expects to learn through discovery.

10.     The John and Jane Doe USDOJ employees are employees of the United States Marshal's Service, a subdivision of the USDOJ, who, in the context of this case, were acting within the scope of their employment.

11.     Pursuant to 28 U.S.C. 2679, the United States is named as the Defendant for the negligent acts of its employees, committed in the course of their employment.

12.     Their identities are currently unknown;  Plaintiff will amend the complaint upon discovery of their names.

13.     This Complaint also names John and Jane Doe CoreCivic employees, whose identities the Plaintiff expects to learn through discovery.

14.     On information and belief, these John and Jane Doe CoreCivic employees reside in the State of Arizona.

15.     The corporate defendant is CoreCivic, Inc., a for-profit corporation that provides detention facility management services to US DOJ.

16.     Defendant CoreCivic, Inc., is a Maryland corporation with its principal place of business at 10 Burton Hills Blvd, Nashville, Tennessee 37125.

17.     CoreCivic contracts with the United States Department of Justice to house persons held in custody pre-sentencing by the Arizona United States District Court.

18.     That contract covers CoreCivic's management of the Florence Correctional Complex, where Mr. Valenzuela was injured.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction over this matter pursuant to 28 USC § 1331, because Plaintiff's claims arise under the Constitution, laws, or treaties of the United States.

20.     As to Mr. Valenzuela-Roman's claims against CoreCivic and its employees, this Court also has diversity jurisdiction, pursuant to 28 USC § 1332.

21.     Because Mr. Valenzuela-Roman alleges permanent injury to his face and eyes, his claims meet or exceed the $75,000 amount in controversy requirement of § 1332.

22.     For state law tort claims raised in this Complaint, Plaintiff relies upon the law of the jurisdiction in which his injury occurred – Arizona.  This Court has jurisdiction over these claims, pursuant to 28 U.S.C. § 1367.

23.     This Court has personal jurisdiction over the Defendants in this matter and the underlying acts of this complaint took place in the District of Arizona.

24.     Venue in this district is proper under 42 U.S.C. § 1391, because, as described below, the acts or omissions giving rise to the Plaintiffs' claims took place in Arizona.

**STATEMENT OF FACTS**

25.     The U.S. Marshals Service is a subdivision of the United States Department of Justice, responsible for maintaining custody of individuals detained pending trial or sentencing for federal criminal offenses.

26.     In fiscal year 2020, the Marshals received over 160,000 individuals into its custody and, on average, had custody over 62,000 individuals every day.[1]

27.     Because the U.S. Marshal's Service does not own or operate any detention facilities, it places those in its custody in facilities run by other entities.[2]

28.     The U.S. Marshal's Service detains the vast majority—around 85 percent—of those in its custody outside the federal system, through approximately 1,200 contracts with state, local, and private facilities.[3]

---

[1] *Rivera v. Corrections Corporation of America*, 999 F.3d 647, 649 (9th Cir. 2021), citing U.S. Marshals Serv., FY 2020 Annual Report 47–48 (2021), https://www.usmarshals.gov/foia/annual-report-2020.pdf.

[2] *Rivera*, 999 F.3d at 649, citing U.S. Marshals Serv., Prisoner Operations 2 (2021), https://www.usmarshals.gov/duties/factsheets/prisoner_ops.pdf.

[3] *Rivera*, 999 F.3d 649-50.

29.    The U.S. Marshal's Service often contracts with private prison companies, such as CoreCivic, to provide those detention services.

30.    CoreCivic, formerly Corrections Corporation of America, operates private prisons, detention centers, and other correctional facilities throughout the United States.[4]

31.    CoreCivic manages an estimated 39 percent of the country's private prison beds.[5]

32.    CoreCivic manages an estimated 39 percent of the country's private prison beds.

33.    At the end of 2020, the U.S. Marshal's Service was the primary customer at eight of CoreCivic's 47 facilities, and contracts with the Marshals accounted for 21 percent—$396.3 million—of CoreCivic's 2020 revenue.

34.    One of those contracts between the U.S. Marshal's Service and CoreCivic is for the operation and management of the Central Arizona Federal Correctional Complex (hereinafter "FCC") in Florence, Arizona.

35.    CoreCivic owns the FCC.

---

[4] *Id*. at 650.

[5] *Id*., citing CoreCivic, 2020 Annual Report, Form 10-K 14 (2021), http://ir.corecivic.com/static-files/2d02c7d4-786a-4a48-8c1b-3e2522c511f3.

36.    Nearly $400 million worth of U.S. Marshal's Service business accounted for 21% of CoreCivic's revenues in 2020, according to CoreCivic's annual Securities and Exchange Commission report.

37.    By 2022, the U.S. Marshal's Service was paying for-profit prison companies to operate 48 facilities with total average daily populations of 20,827 people — nearly a third of the total population in U.S. Marshal's Service custody.[6]

38.    At the end of 2020, the U.S. Marshal's Service was the primary customer at eight of CoreCivic's forty-seven facilities, and contracts with the Marshals accounted for 21 percent—$396.3 million—of CoreCivic's 2020 revenue.[7]

39.    Companies such as CoreCivic deny engaging in lobbying efforts, but private prison corporations such as CoreCivic routinely specifically target legislators over immigration "reform."

40.    By 2015, CoreCivic derived 51% of its revenue from federal contracts.

---

[6] American Civil Liberties Union, Letter to Ronald L. Davis, Director, United States Marshal's Service, September 18, 2023, available at https://assets.aclu.org/live/uploads/2023/09/2023.09.15-FINAL-ACLU-Letter-on-USMS-Failure-to-Comply-with-EO-14006.pdf (last visited February 17, 2025).

[7] *Rivera*, 999 F.3d at 650, citing CoreCivic, 2020 Annual Report, Form 10-K 7, 15 (2021), http://ir.corecivic.com/static-files/2d02c7d4-786a-4a48-8c1b-3e2522c511f3.

41.    CoreCivic (previously known as CCA) has a lengthy history of refusing to provide adequate medical treatment to those it houses.[8]

42.    CoreCivic has repeatedly been the subject of investigations and lawsuits regarding delayed health care to inmates and detainees, often resulting in death.[9]

---

[8] *See, e.g.*, *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-2267, 2019 WL 1399600, at *2 (M.D.  Tenn. March 26, 2019) (shareholder class certified alleging CoreCivic's "failure to provide sufficient medical services to its inmates."); *Dodson v. CoreCivic*, No. 3:17-CV-00048, 2018 WL 4800836, at *1 (M.D. Tenn. Oct. 3, 2018) (alleging deliberate inference to prisoners medical needs); *Pierce v. D.C.*, 128 F. Supp.3d 250, 284 (D.D.C. 2015) (finding prisoner's ADA and Section 504 rights violated at CoreCivic facility).

[9] Seth Freed Walker, "Federal Officials Ignored Years of Internal Warnings About Deaths at Private Prisons," *The Nation*, June 15, 2016, available at https://www.thenation.com/article/archive/federal-officials-ignored-years-of-internal-warnings-about-deaths-at-private-prisons/  (last visited January 17, 2025).  "At least 38 men died in the BOP's privately run prisons from 1998 to 2014 in the wake of inadequate medical care. An examination of thousands of pages of previously unreleased files revealed that gravely ill prisoners had been left untreated, or relegated to the care of low-level medical workers. In some facilities, inmates went months without seeing a doctor. Some prisoners who required emergency care were not transferred to a hospital, in an apparent attempt to save costs . . . In a striking confirmation of these findings, the new records show that BOP monitors documented, between January 2007 and June 2015, the deaths of 34 inmates who were provided substandard medical care. Fourteen of these deaths occurred in prisons run by CCA [the prior corporate name for CoreCivic."

**I.      The United States' Non-Delegable Duty to the Prisoners in its Care.**

43.      As a jailer, the United States has a special, affirmative duty to the non-citizens in its custody to protect them from forseeable harm.[10]

44.      That special duty applies both to the safety of the facility and the medical care provided to detainees in the facility.

45.      The United States cannot delegate this special duty to its contractors.

**II.      CoreCivic's and the US DOJ's Operating Agreement.**

46.      The Operating Agreement that controls CoreCivic's detention of federal inmates at FCC prohibits US Marshal's Service detainees "from operating equipment that may expose the detainees to great bodily harm."[11]

47.      The Operating Agreement also provides:

> Prisoners or detainees shall not be used to perform the responsibilities or duties of an employee of the Contractor.  Appropriate safety/protective clothing and equipment shall be provided to prisoners or detainees as appropriate.  Prisoners or detainees shall not be assigned work that is considered hazardous or dangerous.  This includes, but is not limited to, areas or assignments requiring great heights, extreme temperatures, use of toxic substances and unusual physical demands.[12]

---

[10]   *C.M. v. United States*, 699 F.Supp.3d 809, 825 (D.Ariz. 2023).

[11]   Operating Agreement Section C.8.6.

[12]  Operating Agreement at C.8.6.

48.    The Operating Agreement also requires CoreCivic to comply with the US Marshal's Service' Federal Performance Based Detention Standards.[13]

49.    Those standards include the requirement that inmates requiring medical care outside of the facility "are transferred under appropriate security to a facility to a facility where such care is available."[14]

50.    For non-emergency care off site, the US Marshal's Service requires that prisoners receive pre-authorization of the US Marshal's Service to ensure consistency with its prisoner Health Care Standards.[15]

**III.    Mr. Valenzuela-Roman's Injuries.**

51.    On February 17, 2023, Mr. Valenzuela-Roman was held as a federal pre-trial detainee in the Central Arizona Florence Correctional Complex.

52.    To earn money to buy incidentals, Mr. Valenzuela-Roman worked as a porter for one dollar per day.

53.    His work as a porter included assisting with cleaning the facility.

---

[13] Operating Agreement at C.2.1.

[14]  USMS Federal Detention Standards, B.4.7, available at https://www.usmarshals.gov/sites/default/files/media/document/detention-standards.pdf (last visited February 17, 2025).

[15] *Id.*

54.    On February 17, 2023, a female CoreCivic guard – Jane Doe Guard One -- whose name the Plaintiff expects will be identified in the course of discovery, directed Mr. Valenzuela to transfer a caustic cleaning chemical from a large, one-gallon jug to smaller cleaning bottles.

55.    On information and belief, this cleaning chemical was intended to be used on hard surfaces in the bathrooms and living areas of the facility.

56.    On information and belief, this cleaning chemical was similar in strength and danger to bleach.

57.    CoreCivic guard Jane Doe Guard One did not provide any protective gear to Mr. Valenzuela-Roman when she directed him to transfer the chemical from the gallon jug to the smaller jugs.

58.    Jane Doe Guard's failure to provide Plaintiff with any protective gear to an inmate she has ordered to handle these caustic substances constitutes negligence.

59.    Mr. Valenzuela-Roman, following Jane Doe Guard One's direction, began to transfer the chemical from the large jug to the smaller bottles, all without eye or skin protection.

60.    In the course of transferring the chemical, the substance splashed into Mr. Valenzuela's eyes and onto his face.

61.    The caustic chemical burned his eyes and skin.

62.     Jane Doe CoreCivic Guard One saw the chemical splash onto Mr. Valenzuela-Roman.

63.     Jane Doe CoreCivic Guard One tried to render first aid treatment and took Mr. Valenzuela-Roman to the FCC's infirmary.

64.     At the infirmary, Mr. Valenzuela-Roman received no burn care for either his skin or his eyes.

65.     The CoreCivic John and Jane Does working in the FCC infirmary refused to provide Mr. Valenzuela-Roman burn care, giving him only over-the-counter pain medication and a salve to put on his burns.

66.     Their refusal to provide Plaintiff with any burn care constitutes negligence.

67      Their refusal to provide Plaintiff with any burn care constitutes a deliberate indifference to a serious medical need.

68.     Mr. Valenzuela-Roman's CJA counsel brought these injuries to the attention of CoreCivic and the US Marshal's Service on February 22, 2023.[16]

69.     The following day, CoreCivic responded that it had given Mr. Valenzuela-Roman an x-ray and Tylenol.[17]

---

[16] *Id*. at 2.

[17] *Id*.

70.     CoreCivic also stated on February 23, 2023 that Mr. Valenzuela-Roman was "scheduled to see a provider."[18]

71.     The U.S. Marshal's Service employees took no action to ensure that Mr. Valenzuela received timely, effective burn treatment.

72.     These burns were observed by this CJA panel attorney on March 10, 2023. In a motion to the Court, CJA counsel described "open wounds oozing blood" on Mr. Valenzuela-Roman's face.[19]

73.     CJA Counsel further documented to the Court delayed medical care for these burns.

74.     CJA Counsel contacted CoreCivic again on March 10, 2023, noting his observation that Mr. Valenzuela-Roman's face had wounds oozing blood.[20]

75.     CJA Counsel noted to the Court that on March 1, 2023, CoreCivic denied Mr. Valenzuela-Roman's grievances about this delay in his medical care, because he had written in the margins of the grievance form – Mr. Valenzuela-Roman's vision injury nothwithstanding.

---

[18] *Id.*

[19] *United States v. Valenzuela-Roman*, Arizona District Court Number 22CR2566-DWL, ECF Doc. 24 at 1.

[20] *Id.*

76.     The CoreCivic Doe employees' failure to provide medical care for the Plaintiff  -- even after Plaintiff submitted a grievance about his lack of medical care -- constitutes, at the least, negligence.

77.     The CoreCivic Doe employees' failure to provide medical care for the Plaintiff's burns constitutes a deliberate indifference to the Plaintiff's serious medical needs.

78.     On March 11, 2023, CoreCivic responded that an optometry referral was made on March 10, 2023.

79.     Mr. Valenzuela-Roman now claims that the injuries sustained at the facility, where the US Marshal's Service holds the pretrial detainees for the Arizona District Court, are permanent.

80.     These injuries were exacerbated by CoreCivic's and the USDOJ's John and Jane Doe employees delaying and denying medical care for these injuries.

## PLAINTIFF'S CAUSES OF ACTION AGAINST DEFENDANTS

### COUNT ONE
### NEGLIGENCE
**(Defendants United States;  CoreCivic;  John and Jane Doe CoreCivic Employees;  ABC Corporations)**

81.     Plaintiff re-alleges each and every paragraph, *supra*, as if fully alleged herein.

82.     Here, the Defendants were negligent in four, distinct ways.

83.    First, the CoreCivic Defendant Jane Doe Guard One was negligent in requiring Mr. Valenzuela-Roman to work with dangerous chemicals.

84.    Second, the CoreCivic Defendant Jane Doe Guard One was negligent in not providing Mr. Valenzuela-Roman the proper protective equipment or clothing when working with dangerous chemicals.

85.    Third, the CoreCivic Defendants John and Jane Does were negligent in denying or delaying Mr. Valenzuela-Roman critical medical care immediately when he was injured.

86.    Fourth, the US DOJ John and Jane Doe and CoreCivic John and Jane Doe Defendants were negligent in denying or delaying Mr. Valenzuela-Roman critical medical care in the weeks after the injury, despite his requests for medical care.

**COUNT TWO**
**AGGRAVATED NEGLIGENCE**
**(Defendants United States;  CoreCivic;  John and Jane Doe CoreCivic Employees;  ABC Corporations)**

87.    Plaintiffs re-alleges each and every paragraph, *supra*, as if fully alleged herein.

88.    Defendants committed aggravated negligence in two, distinct ways.

89.    First, CoreCivic John and Jane Doe Defendants knew or should have known that work with dangerous chemicals, without proper protective equipment, involved a high probability that such harm would result.

90.    Second, US DOJ John and Jane Doe and CoreCivic John and Jane Defendants knew or should have known that denying or delaying medical care for chemical burns would not only create an unreasonable risk of bodily harm to Mr. Valenzuela-Roman, but also involved a high probability that such harm would result.

91.    Despite the fact that the Defendants knew or had reason to know their conduct would probably result in harm, they nonetheless engaged in that conduct, which ultimately resulted in harm to Plaintiffs.

92.    A reasonable person in Defendants' position would have known or would have had reason to know that their actions created an unreasonable risk of harm and the risk was so great that it was probable that harm would result.

93.    As a result of Defendants' wanton and reckless acts and omissions, Plaintiffs suffered damages in an amount to be proven at trial, including but not limited to pecuniary damages, pain and suffering, and emotional distress.

## COUNT THREE
## NEGLIGENT SUPERVISION OR TRAINING OF EMPLOYEES
### (Defendant CoreCivic)

94.    Plaintiffs re-alleges each and every paragraph, *supra*, as if fully alleged herein.

95.    The CoreCivic employees' failures to ensure Mr. Valenzuela-Roman's safety while working, *supra*, was the direct and proximate result of the United States' and CoreCivic's failure to properly supervise and train their employees.

96.    The CoreCivic employees' failures to provide effective, timely medical care for Mr. Valenzuela's chemical burns, *supra*, was the direct and proximate result of CoreCivic's failure to properly supervise and train their employees.

97.    A reasonable person in CoreCivic's position would have known or would have had reason to know that its employees' actions created an unreasonable risk of harm and the risk was so great that it was probable that harm would result.

## COUNT FOUR
## *RESPONDEAT SUPERIOR* LIABILITY
### (Defendant CoreCivic)

98.    Plaintiff re-alleges the foregoing paragraphs as if fully alleged herein.

99.    The conduct of CoreCivic's employees, occurred while they were acting within the ordinary scope of their employment.

100.    As such, CoreCivic is responsible for Mr. Valenzuela-Roman's injuries under the *respondeat superior* doctrine.

101.    As a result of the foregoing actions or inactions of the Defendants, Plaintiff suffered the following damages:

a.      Injury to his face and eyes.

b.      The pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future;

c.      The reasonable expenses of necessary medical care and services for the injury that resulted in Mr. Valenzeula-Roman.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

1.      Compensatory and punitive damages;

2.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

3.      Such other and further relief as the Court deems just.

WHEREFORE, Plaintiff asks this Court to enter a Judgment in his favor.

PLAINTIFF DEMANDS A JURY TRIAL

Respectfully submitted this Sixth day of January, 2026.

s/Joy Bertrand
Joy Bertrand
Attorney for Plaintiff